UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00607-RJC-DCK

| | |
|---|---|
| MUD PIE, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| BELK, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on Defendants Belk, Inc., Belk International, Inc., and Belk eCommerce, LLC's (collectively, "Belk") Motion to Dismiss, (Doc. No. 33), and the parties' associated briefs and exhibits.

I. **BACKGROUND**

Accepting the factual allegations of the First Amended Complaint, (Doc. No. 29: First Amended Complaint ("FAC")), as true, Plaintiff Mud Pie, LLC ("Mud Pie" or "Plaintiff") created a line of casual dishware products around June 2012 that would become known as Mud Pie's "Circa" line. (Doc. No. 29: FAC ¶ 13). Some of the products in the Circa line, and those at issue in this case, are "comprised generally of white ceramic embossed with a humorous pun or phrase in a black American Typewriter font and paired with an antique-style silver utensil also containing a humorous pun or phrase" ("Mud Pie Trade Dress"). (FAC ¶ 14). Sometime on or before 2013, Belk and Mud Pie entered into a relationship wherein Belk purchased Mud Pie products, including those from Mud Pie's Circa line, and

1

sold those products directly to consumers. (See FAC ¶ 17). Belk sold Mud Pie products, about 25% of which were from the Circa line, from 2013 until 2017. (FAC ¶¶ 17–18).

On or around November 2017, Mud Pie terminated its relationship with Belk. (FAC ¶ 20). At some unspecified point, Belk hired TRIRAF, Inc. f/k/a Thirstystone Resources, Inc. ("Thirstystone") to create a "casual whiteware private label line" for Belk under Belk's "Modern. Southern. Home." brand ("MSH"). (FAC ¶ 21). Thirstystone supplied Belk with dishware products that Mud Pie alleges copy and incorporate the Mud Pie Trade Dress and Mud Pie's copyrights[1], which Belk began selling in April 2018, less than six months after Mud Pie pulled its products from Belk stores. (FAC ¶¶ 22–23). Mud Pie did not authorize Belk to make copies or derivative works of the Circa line, and Belk has not compensated Mud Pie for sales of any of its MSH products. (FAC ¶¶ 26–28).

Plaintiff initiated this action on November 13, 2018 by filing a Complaint, (Doc. No. 1), and a Motion for Temporary Restraining Order and Preliminary Injunction, (Doc. No. 6), against Belk. After a hearing on November 19, 2018, the Court denied Plaintiff's Motion. (Doc. No. 28). On December 3, 2018, Plaintiff filed its FAC, in which it added Thirstystone as a defendant to this action based on Thirstystone's alleged role in designing and supplying Belk with the products at issue in this suit. (Doc. No. 29). In its FAC, Plaintiff alleges four causes of action

---

[1] Mud Pie owns at least two copyrights for "sculptural design[s] on utensil handle[s]" for two Spring 2015 Circa products. These copyrights are effective as of March 2015. (See Doc. No. 29-2: FAC Ex. B).

against Defendants: (1) trade dress infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 101 et seq.; (3) violation of North Carolina's Unfair and Deceptive Trade Practices Act ("N.C. UDTPA") as codified in N.C. Gen. Stat. § 75-1.1; and (4) violation of North Carolina's Unfair Competition standard at common law. On December 17, 2018, Belk filed a Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 33).

## II. STANDARD OF REVIEW

The standard of review for a motion to dismiss under 12(b)(6) for failure to state a claim is well known. Fed. R. Civ. P. 12(b)(6). It tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means allegations that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only "'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 545 (quoting Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 775 (1984)). Additionally, when ruling on a defendant's motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (quoting Twombly, 550 U.S. at 555–56). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986). Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed. Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc., 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

In its Motion to Dismiss, Belk asks this Court to dismiss Plaintiff's claims because "the FAC fails to provide adequate factual allegations to put Belk on notice either of what exactly it is accused of infringing, or which Belk products are at issue in this matter." (Doc. No. 33 at 2). The Court is not persuaded by Belk's lack of notice argument.[2] Nonetheless, the Court finds that Plaintiff's FAC fails to meet

---

[2] The Court notes that the Second and Third Circuits have identified a plaintiff's duty to "articulat[e] the specific elements which comprise its distinct dress" to state a claim for relief. Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 309 (3d Cir. 2014) (quoting Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 381 (2d Cir. 1997); see also Shevy Custom Wigs, Inc. v. Aggie Wigs, No. 06-cv-1657,

4

the minimum pleading standards required to survive a 12(b)(6) motion as established by Twombly and Iqbal in regard to its trade dress claim (Count I). But the Court determines that Plaintiff has sufficiently pleaded its copyright and state-law claims (Counts II–IV).

A. Federal Trade Dress Claim

"A claim of trade dress infringement requires proof of three elements: (1) the trade dress is primarily non-functional; (2) the trade dress is inherently distinctive or has acquired a secondary meaning; and (3) the alleged infringement creates a likelihood of confusion." Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc., 87 F.3d 654, 657 (4th Cir. 1996). As stated above, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan, 478 U.S. at 286). Here, Plaintiff makes the mistake

---

2006 WL 3335008, at *4 n.7 (E.D.N.Y. Nov. 17, 2006) (explaining the legal development of this additional requirement). However, the Fourth Circuit has not indicated a similar willingness to isolate such a requirement. As such, the Court finds Belk's "lack of notice via specificity" argument is best evaluated within the general pleading standards required to survive a 12(b)(6) motion. Here, taking Plaintiff's allegations as true, Plaintiff has identified its own line of products that Defendants infringed upon, isolated specific design features that Defendants copied, identified Defendants' "Infringing Product[]" line, and included like-for-like photographic comparisons in its FAC. (Compare Doc. No. 29-1: FAC Ex. A – Examples of Mud Pie Products, with Doc. No 29-3: FAC Ex. C – Examples of Belk Products). Thus, Belk is sufficiently on notice as to the products at issue in this matter. See Someecards v. SnarkeCards, LLC, No. 3:14-CV-00097-FDW, 2014 WL 3866024, at *2 (W.D.N.C. Aug. 6, 2014) (noting that the plaintiff provided images in an accompanying exhibit that embodied the trade dress elements identified in the complaint and concluding that "[a]t the pleadings stage, pictures
of trade dress alone may provide the necessary description of trade dress.").

5

of relying on a conclusory statement to establish the first element of its trade dress claim: that the Mud Pie Trade Dress is primarily non-functional.

"A product feature is functional if it is essential to the use or purpose of the article or it affects the cost or quality of the article." Tools USA, 87 F.3d at 658 (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844 (1982)). "In other words, a feature is functional 'if exclusive use of the feature would put competitors at a significant nonreputation-related disadvantage.'" Id. (quoting Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 165 (1995)). "The law of functionality is further divided into 'utilitarian' functionality and 'aesthetic' functionality." Baughman Tile Co. v. Plastic Tubing, Inc., 211 F. Supp. 2d 720, 722 (E.D.N.C. 2002) (quoting TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 33 (2001)). Here, Plaintiff simply states that "[t]he Mud Pie Trade Dress is non-functional" without any further explanation or supporting factual allegations. (FAC ¶ 33). While the Court notes that functionality is a question of fact, McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014), a plaintiff still must plead some minimum baseline of accompanying factual allegations to support an assertion of non-functionality. Here, the FAC is devoid of any factual assertions to support Plaintiff's conclusion that the Mud Pie Trade Dress is primarily non-functional. Accordingly, Plaintiff's statement is nothing more than a threadbare, formulaic

recitation of an element of its federal trade dress claim—something which Twombly and Iqbal prohibit.

Regarding the other two elements of Plaintiff's trade dress infringement claim, Plaintiff provides factual allegations to support an inference that (1) Mud Pie's Trade Dress has acquired secondary meaning and (2) Belk's infringement creates a likelihood of confusion. To plausibly allege a claim for trade dress infringement, Plaintiff must allege that Mud Pie's trade dress has attained distinctiveness through a showing of secondary meaning. Secondary meaning "occurs, when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 211, (2000) (quoting Inwood Labs., 456 U.S. at 851)). "'Proof of secondary meaning entails vigorous evidentiary requirements,' and thus 'secondary meaning is factual in nature and typically ill-suited for a motion to dismiss.'" Camco Mfg., 2019 WL 2176331, at *2 (quoting Rothy's, Inc. v. JKM Techs., LLC, 360 F. Supp. 3d 373, 387 (W.D. Va. 2018)).

"[E]vidence of intentional direct copying establishes a prima facie case of secondary meaning." Osem Food Indus. Ltd. v. Sherwood Foods, Inc., 917 F.2d 161, 163 (4th Cir. 1986) (quoting Kramer Mfg. Co. v. Andrews, 783 F.2d 421, 448 (4th Cir. 1986)). Additionally, "[c]ourts in the Fourth Circuit consider four factors to determine if purported trade dress has acquired secondary meaning: '(1) long use; (2) advertising; (3) sales volume; and (4) identity of service or origin in the minds of the purchasing public.'" Camco Mfg., Inc. v. Jones Stephens Corp., No. 1:18-CV-

7

0645, 2019 WL 2176331, at *2 (M.D.N.C. May 20, 2019) (quoting Tools USA, 87 F.3d at 660)).

Here, the crux of Plaintiff's FAC is that Defendants' MSH line directly copies the trade dress of the Circa line, creating a presumption of secondary meaning. Additionally, Plaintiff has touched on the other four factors that Fourth Circuit Courts consider in assessing secondary meaning: (1) long use, (2) advertising, (3) sales volume, and (4) identity of origin in the minds of the purchasing public. For the first factor, Plaintiff alleges that it has been "creating a distinctive line of products that would become known as Mud Pie's Circa line" since around June 7, 2012—seven years ago. (FAC ¶ 12). For advertising, Plaintiff alleges that "Mud Pie has invested significant money and effort in nationwide advertising and promotion of its Circa line of products which have resulted in great commercial success and recognition of the Mud Pie Trade Dress." (FAC ¶ 31). For sales volume, Plaintiff alleges that (1) its "products are available in thousands of specialty retailers and department stores around the world and directly to consumers through its websites" and (2) "Mud Pie's Circa line is its best selling and longest running product line." (FAC ¶¶ 12, 16). Plaintiff also alleges that "Mud Pie's Circa line sold very well for Belk" and specified the amount of sales Plaintiff generated from Belk: "Belk purchased from Mud Pie approximately $3,576,496.70 dollars' worth of products which approximately 25%, or $879,164.63, were Circa products." (FAC ¶¶ 18–19). For the fourth factor, Plaintiff alleges that the Mud Pie Trade Dress "is distinctive, protectable, and distinguishes Mud Pie's serveware/tableware from its competitors'

products." (FAC ¶ 30). Plaintiff further asserts that "[a]s a result of Mud Pie's advertising and promotion and the nationwide sale of its Circa products, the trade and purchasing public have come to associate the Mud Pie Trade Dress with a single producer or source. Accordingly, the Mud Pie Trade Dress has acquired distinctiveness through secondary meaning in the marketplace." (FAC ¶ 32).

At this stage of litigation, the Court finds that Plaintiff's allegation that Defendants intentionally and directly copied its products, as well as Plaintiff's other averments regarding the four factors outlined above, meet the minimum pleading requirements to establish secondary meaning. This is especially true when considering that courts in this Circuit have concluded that, "[a]t the pleading stage, extensive factual allegations of secondary meaning are not required because the claim requires an 'inherently factual review rarely resolved at the motion to dismiss stage.'" Camco Mfg., 2019 WL 2176331, at *3 (quoting Stat Ltd. v. Beard Head, Inc., 60 F. Supp. 3d 634, 638 (2014)). Unlike the absence of factual allegations supporting Plaintiff's assertion that Mud Pie's Trade Dress is non-functional, here, Plaintiff has put forth sufficient factual allegations to support an inference of secondary meaning, thereby meeting Twombly and Iqbal standards on the second element of its trade dress claim.

Turning to the third and final element of Plaintiff's trade dress claim—likelihood of confusion—the Court determines that Plaintiff has sufficiently alleged

9

that Belk's infringement creates a likelihood of confusion. To determine whether a likelihood of confusion exists, courts examine nine factors:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;
> (2) the similarity of the two marks to consumers;
> (3) the similarity of the goods or services that the marks identify;
> (4) the similarity of the facilities used by the markholders;
> (5) the similarity of advertising used by the markholders;
> (6) the defendant's intent;
> (7) actual confusion;
> (8) the quality of the defendant's product; and
> (9) the sophistication of the consuming public.

Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 314 (4th Cir. 2017) (quoting George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009)). A plaintiff need not meet all nine factors to show a likelihood of confusion. Id. (quoting Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 171 (4th Cir. 2006)). "Visual inspection is permissible as an aid to a district court's determination of likelihood of confusion, but should not constitute the sole basis for the conclusions made." Woodsmith Publ'g Co. v. Meredith Corp., 904 F.2d 1244, 1249 (8th Cir. 1990), cited in Tools, 87 F.3d at 660. Here, Plaintiff's attached images, combined with Plaintiff's allegations that Belk swapped out the Circa product line with the MSH line within six months of Circa's departure, are sufficient to establish a likelihood of confusion at the motion-to-dismiss stage.

In sum, while the Court finds that Plaintiff has sufficiently alleged the second and third elements of its trade dress claim, because Plaintiff has relied on a conclusion devoid of accompanying factual allegations to establish the first element of its claim—non-functionality—Plaintiff's trade dress claim fails Twombly and

10

Iqbal pleading standards.  As such, the Court therefore **GRANTS** Belk's Motion to Dismiss as to Count I of the FAC and **DISMISSES** Count I **without prejudice**. Plaintiff is **DIRECTED** to file a Second Amended Complaint within **FOURTEEN DAYS** of the issuance of this Order.[3]

### B. N.C. UDTPA and Unfair Competition Claims

"The elements of a claim for unfair or deceptive trade practices are: '(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business.'" Noble v. Hooters of Greenville (NC), LLC, 681 S.E.2d 448, 452 (N.C. Ct. App. 2009).  "Acts are deceptive when they 'possess [ ] the tendency or capacity to mislead, or create[ ] the likelihood of deception.' . . . Furthermore, the 'intent of the actor' and good faith are irrelevant."  Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 164 (4th Cir. 2012) (internal citations omitted).  "The standard which a plaintiff must meet to recover on an unfair competition claim under the common law is not appreciably different [than the N.C. UDTPA standard]." BellSouth Corp. v. White Directoryt Publishers, Inc., 42 F. Supp. 2d 598, 615 (1999).  "The universal test question [for common law unfair competition] is whether the public is likely to be deceived."  Carolina Aniline & Extract Co. v. Ray, 20 S.E.2d 59, 61 (N.C. 1942).

Here, Plaintiff bases both its N.C. UDTPA and Unfair Competition claims on its trade dress violation.  (See FAC ¶¶ 50, 56).  As stated above, Plaintiff has

---

[3] Plaintiff asks the Court for leave to amend its FAC if the Court grants Belk's Motion to Dismiss.  (Doc. No. 37 at 16–17).  The Court will permit Plaintiff to file a Second Amended Complaint.

11

adequately pleaded the third element of its trade dress claim—likelihood of confusion—which is also the central inquiry for Plaintiff's state-law claims. Conduct that creates a likelihood of confusion may also create a likelihood of deception or a capacity to mislead. Thus, the Court finds that Plaintiff's pleading regarding the likelihood of confusion element of Count I also supports Plaintiff's N.C. UDTPA[4] and Unfair Competition claims.

Nevertheless, Belk contends that Plaintiff's N.C. UDTPA and Unfair Competition claims are subsumed by the Copyright Act. (Doc. No. 34 at 6–9). The Court is not convinced preemption applies to Plaintiff's state-law claims. To determine whether the Copyright Act preempts a state-law claim, this Circuit follows a two-prong inquiry: "first, the work must be 'within the scope of the subject-matter of copyright' as specified in 17 U.S.C. §§ 102, 103,' and second, 'the rights granted under state law' must be 'equivalent to any exclusive rights within the scope of federal copyright . . . .'" U.S. ex rel. Berge v. Bd. Of Trustees of the Univ. of Ala., 104 F.3d 1453, 1463 (4th Cir. 1997) (quoting Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 229 (4th Cir. 1993)).

Here, Belk does not argue that Mud Pie's Trade Dress is protectable under the Copyright Act.[5] Rather, Belk contends that because Mud Pie's Trade Dress

---

[4] The Court is satisfied that Plaintiff has adequately pleaded the remaining two elements of a N.C. UDTPA claim. (See FAC ¶¶ 23, 27–28, 52).
[5] 17 U.S.C. § 102(a) defines the subject matter of copyright as:

> [O]riginal works of authorship fixed in any tangible medium of expression. . . . Works of authorship include the following categories: (1) literary works; (2) musical works, including any

12

includes at least some portion of copyrightable material, then the whole must fall under the subject-matter purview of the Copyright Act.

As stated above, Plaintiff bases its N.C. UDTPA and Unfair Competition claims exclusively on its trade dress claim, not its copyright claim. (See FAC ¶¶ 50, 56). Mud Pie has identified its Trade Dress as being "comprised generally of white ceramic embossed with a humorous pun or phrase in a black American Typewriter font and paired with an antique-style silver utensil also containing a humorous pun or phrase." (FAC ¶ 14). Although some Circa products incorporate Plaintiff's copyrighted design into the Mud Pie Trade Dress, those copyrights are but one feature of the overall appearance. Furthermore, the Court notes that Mud Pie's copyrights are limited to specific "sculptural design[s] on utensil handle[s]" as compared to its trade dress that includes the broader universe of "antique-style silver utensil[s]." (Doc. No. 29-2: FAC Ex. B). Therefore, the Court finds that, even though a small subset of a single feature of an overall trade dress is protected by copyright, that subset does not render Plaintiff's state-law actions (premised on

---

accompanying words; (3) dramatic works, including any accompanying music; (4) pantomimes and choreographic works; (5) pictorial, graphic, and sculptural works; (6) motion pictures and other audiovisual works; (7) sound recordings; and (8) architectural works.

Applying a plain reading of the above, and 17 U.S.C. § 101, the Court does not find that Mud Pie's Trade Dress as a whole is capable of copyright protection, thereby failing the first preemption prong.

trade dress violation) preempted by the Copyright Act. Accordingly, the Court **DENIES** Belk's Motion to Dismiss as to Counts III and IV of the FAC.

### C. Copyright Claim

Finally, addressing Plaintiff's copyright claim, the Court is not persuaded by Belk's lack of specificity argument.[6] To support a claim for copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'n, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). "Plaintiffs in a copyright infringement action are not required to append copies of the actual work, so long as the complaint complies with the notice requirements of Rule 8. No additional specificity is required." Mannella Grp., Inc. v. Cornerstone Chiropractic Mktg., Inc., No. 3:14-cv-449, 2015 WL 2412429, at *2 (W.D.N.C. May 21, 2015).

Here, Plaintiff alleges that it owns valid copyrights for its "original designs on utensil handles" for at least two products within its Circa line. (FAC ¶ 42). Plaintiff asserts that "certain utensils within Defendants' 'Modern. Southern. Home.' line are substantially and strikingly similar to the copyright Mud Pie designs in the Mud Pie Copyrights." (FAC ¶ 44). In support of this allegation, Plaintiff attaches copies of the copyright registrations and images of at least one of

---

[6] Belk argues that "the FAC fails to identify the accused products or otherwise put Belk on notice as to which specific Belk utensils allegedly infringe the elements covered by Mud Pie's Registrations." (Doc. No. 34 at 5). Again, Plaintiff has attached a picture of its products, one of which incorporated a Mud Pie copyright, to its FAC. For the same reasons stated herein, the Court finds Belk's argument unavailing. See supra note 2.

its copyrighted utensils. (Doc. No. 29-2: FAC Ex. B; Doc. No. 29-1: FAC Ex. A, at 3). Plaintiff also includes an example of one of Defendants' allegedly infringing utensils. (Doc. No. 29-3: FAC Ex. C, at 2). Accordingly, the Court finds that Plaintiff's copyright claim meets minimum pleading standards and thus **DENIES** Belk's Motion to Dismiss as to Count II of the FAC.

IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Belk's Motion to Dismiss First Amended Complaint, (Doc. No. 33), is **GRANTED IN PART** and **DENIED IN PART.** That is, Belk's Motion is granted in part as to Count I. Plaintiff's trade dress infringement claim is **DISMISSED without prejudice.** Belk's Motion is **DENIED in part** as to Counts II, III, and IV.

2. Plaintiff shall have up to and including **FOURTEEN DAYS** after issuance of this Order to file a Second Amended Complaint.

Signed: July 18, 2019

Robert J. Conrad, Jr.
United States District Judge